UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Martha A. Castellon-Vogel,

        Plaintiff,                              Case No. 1:18-cv-00688

      v.                                        Judge Michael R. Barrett

International Paper Company,

        Defendant.

## ORDER

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint for Discrimination, Equal Pay, Wrongful Termination, and Declaratory Judgment. (Doc. 7). Plaintiff filed a memorandum in opposition (Doc. 10), to which Defendant replied (Doc. 11). For the reasons that follow, Defendant's Motion to Dismiss will be GRANTED.

### I.    BACKGROUND

On June 30, 2017, Defendant International Paper Company ("IP") eliminated Plaintiff Martha A. Castellon-Vogel's job. (Complaint, Doc. 1 ¶ 5 at PageID 2). Plaintiff had worked for Defendant as a full-time, salaried employee for almost twenty-eight years. (*Id.* ¶ 4 at PageID 2). Plaintiff alleges that—based on her sex, national origin, and age—Defendant discriminated against her by treating others more favorably, specifically in regard to wages, opportunities, promotions, and disciplinary matters. (*Id.* ¶ 7 at PageID 2). Further, Plaintiff alleges that she was physically assaulted by a male supervisor and pervasively harassed during her employment. (*Id.* ¶¶ 8, 9 at PageID 3).

1

Plaintiff claims that Defendant retaliated against her after she reported the assault to Defendant. (*Id.* ¶ 9 at PageID 3).

During Plaintiff's employment, Defendant established the International Paper Company Salaried Employee Severance Plan ("Plan"), which is a welfare benefit plan governed by ERISA. (*Id.* ¶¶ 12, 13 at PageID 3). Under the Plan, Plaintiff was eligible for a termination allowance due to the termination of her job. (*Id.* ¶ 14 at PageID 3). To receive this termination allowance, the Plan required Plaintiff to sign an agreement that was "acceptable to the Company." (*Id.* ¶ 15 at PageID 3–4). This agreement was a Termination Agreement and Release ("Release"), which included a "General Release of Claims" provision. (*Id.* ¶ 16 at PageID 4). This "General Release of Claims" provision released Defendant from any legal claim, including claims brought under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, the Equal Pay Act, and ERISA. (*Id.* ¶ 16 at PageID 4, Release ¶ 7 at PageID 11–12). Plaintiff was given twenty-one (21) days to sign the agreement. (*Id.* ¶ 18 at PageID 4).

Plaintiff's counsel informed Defendant that Plaintiff's eligibility for her termination allowance under the Plan could not be conditioned on the signing of the Release, because Plaintiff was already entitled to the Plan's termination benefits pursuant to ERISA. (*Id.* ¶ 17 at PageID 4). Nonetheless, Plaintiff signed the Release. (*Id.* ¶ 19 at PageID 4). Plaintiff received—and apparently kept—the termination allowance. (*Id.* ¶¶ 21, 26 at PageID 5).

In 2017, Plaintiff sued Defendant in this Court, seeking a declaration that the Release was null, void, and unenforceable under ERISA and does not otherwise bar her from bringing claims against Defendant for wrongful termination and discrimination.

2

*See Castellon-Vogel v. Int'l Paper Co.*, No. 1:17-cv-00645, 2018 U.S. Dist. LEXIS 120040 at *6–7, 2018 WL 3462505 (S.D. Ohio July 18, 2018) ("*Castellon-Vogel I*"), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 150581, 2018 WL 4216812 (S.D. Ohio Sept. 5, 2018). That civil action, however, was dismissed for lack of subject-matter jurisdiction. 2018 U.S. Dist. LEXIS 120040, at *19–22. Specifically, the Court found that Plaintiff lacked both constitutional and statutory standing under ERISA to challenge the validity of the Release. *Id.* at *21–22. Plaintiff subsequently filed the present action, which seeks the same declaration. (Doc. 1 ¶ 43 at PageID 8). Plaintiff also has added claims for discrimination, retaliation, and "unequal payment" under federal and state law.

## II.     LEGAL ANALYSIS

Defendant has moved to dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). "A motion to dismiss based on Rule 12(b)(1) for lack of subject matter jurisdiction must be considered before a motion brought under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Pritchard v. Dent Wizard Int'l Corp.*, 210 F.R.D. 591, 592 (S.D. Ohio 2002) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (if court lacks subject-matter jurisdiction, Rule 12(b)(6) motion becomes moot)). Accordingly, the Court will begin with Defendant's Rule 12(b)(1) challenge to Plaintiff's request for a declaratory judgment concerning the validity of the Release.

### A. This Court lacks subject-matter jurisdiction to hear Plaintiff's request for a declaratory judgment concerning the validity of the Release under ERISA.

#### 1. Plaintiff bears the burden to establish subject-matter jurisdiction.

Fed. R. Civ. P. 12(b)(1) provides that an action may be dismissed for "lack of subject-matter jurisdiction." The plaintiff bears the burden of proving jurisdiction when challenged by a Rule 12(b)(1) motion. *Moir*, 895 F.2d at 269 (citing *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)). "[T]he plaintiff must show that the complaint alleges a claim under federal law, and that the claim is substantial." *Mich. S. R.R. Co. v. Branch & St. Joseph Cntys. Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002) (internal quotations omitted) (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996)). "The plaintiff will survive the motion to dismiss by showing 'any arguable basis in law' for the claims set forth in the complaint." *Id.* (quoting *Musson Theatrical*, 89 F.3d at 1248).

Here, Plaintiff seeks a declaratory judgment (*see* Complaint, Doc. 1 ¶¶ 39–43 (Count Two) at PageID 7–8), which is governed by the Declaratory Judgment Act, 28 U.S.C. § 2201. The Act authorizes a court to declare the rights and legal relations of interested parties for cases over which there is an independent basis of jurisdiction. *NGS Am. Inc. v. Jefferson*, 218 F.3d 519, 523–24 (6th Cir. 2000) (citing 28 U.S.C. § 2201(a)). That is to say, the Act *itself* is not an independent basis for subject-matter jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950). Accordingly, Plaintiff must establish some independent basis for subject-matter

jurisdiction before this Court may issue a declaratory judgment about the rights and legal relations between Plaintiff and Defendant.

### 2. Plaintiff is precluded from relitigating this Court's prior determination that she lacks statutory standing to challenge the validity of the Release under ERISA.

Standing is necessary to the exercise of jurisdiction and is the "threshold question . . . [that] determin[es] the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). A plaintiff must demonstrate standing for each claim that is brought. *Hagy v. Demers & Adams*, 882 F.3d 616, 620 (6th Cir. 2018) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). If the plaintiff fails to establish standing, a court must dismiss the complaint for lack of subject-matter jurisdiction. *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).

To demonstrate standing, a plaintiff must satisfy both a constitutional and a statutory component. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581 (6th Cir. 2016). Statutory standing is satisfied when the plaintiff "has a cause of action under the statute." *Id.* (quoting *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) (citing *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125–26)). Constitutional standing requires the plaintiff to have suffered an injury-in-fact that is fairly traceable to the defendant's action and is able to be redressed by a favorable decision. *Soehnlen*, 844 F.3d at 581.

As previously noted, in *Castellon-Vogel I* this Court dismissed Plaintiff's complaint for lack of subject-matter jurisdiction because she lacked both constitutional *and* statutory standing. 2018 U.S. Dist. LEXIS 120040, at *19–22. First, Plaintiff lacked

5

statutory standing to challenge the validity of the Release under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B), because she did not have a cause of action under the ERISA statute. *Id.* at *19. Under ERISA, a plan "participant" is "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* § 1002(8). The statute provides that a "participant" or "beneficiary" can bring an action to "recover benefits due to [her] under the terms of [the] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan[.]" *Id.* § 1132 (a)(1)(B).

A "former employee" qualifies as a "participant" only if the former employee has "a reasonable expectation of returning to covered employment" or a "colorable claim to vested benefits." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989). A "colorable claim to vested benefits" has been further defined as a "colorable claim that (1) the person will 'prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future.'" *Swinney v. Gen. Motors Corp.*, 46 F.3d 512, 518 (6th Cir. 1995) (quoting *Firestone*, 489 U.S. at 117–18). Employees cease to be "participants" under a plan when they effectively terminate all their rights under the plan. *Swinney*, 46 F.3d at 518. Former employees are no longer "participants" if they have accepted all the payment that is due to them in a lump sum. *Id.* (quoting *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 952 (6th Cir. 1990)). An exception to the general rule applies if an employee gives up her right to benefits or fails to participate in

the plan "because of the employer's breach of fiduciary duty." *Swinney*, 46 F.3d at 518. "Otherwise, a fiduciary could defeat an employee's standing to bring an ERISA action by duping [her] into giving up [her] right to participate in a plan." *Id.*

The Court in *Castellon-Vogel I* held that Plaintiff—a former employee—did not meet the definition of either a "participant" or a "beneficiary" because she had already received everything due to her under the plan. *Id.* at *16–17. Also, Plaintiff had no reasonable expectation of returning to employment with Defendant based on the agreement she signed. *Id.* at *16 ("Plaintiff agreed when she signed the Termination Agreement that her employment relationship with IP was 'permanently terminated' as of that date, and she agreed 'not to apply for or otherwise seek employment with [IP] in any capacity' in the future"). And, because the exception regarding breach of fiduciary duty did not apply, this Court held that Plaintiff had no cause of action under the ERISA statute and thus no statutory standing. *Id.* at *18-19 ("The statutory component of the 'actual controversy' requirement[1] is not satisfied here").

The Court in *Castellon-Vogel I* also found that Plaintiff lacked constitutional standing because she claimed only a conjectural—and not an actual—injury. 2018 U.S. Dist. LEXIS 120040, at *21. For her injury to "materialize," Plaintiff would need to file a

---

[1] The Declaratory Judgment Act states in part:

> "In a case of <u>actual controversy</u> within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

28 U.S.C. § 2201(a) (emphasis added).

claim encompassed by the Release and, in turn, Defendant would have to raise the Release as a defense to Plaintiff's claim. *Id.*

"Issue preclusion, or collateral estoppel, bars subsequent relitigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action and the same fact or issue is presented in a subsequent suit." *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589 (6th Cir. 2009). In other words, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Id.* (quoting Restatement (Second) of Judgments § 27 (1982)).

Before issue preclusion, or collateral estoppel, can be applied to bar litigation of an issue, four specific requirements must be met: (1) the precise issue must have been raised and actually litigated in a prior proceeding; (2) the determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Cobbins*, 566 F.3d at 589–90. Furthermore, in determining whether defensive use of issue preclusion, or collateral estoppel, is appropriate, the court must consider whether it would be "otherwise unfair under the circumstances[.]" *Id.* at 590. All four requirements are met here.

First, the issue raised and litigated in *Castellon-Vogel I* is precisely the same as the issue in the current proceeding. In *Castellon-Vogel I*, Plaintiff sought a declaration that "the General Release of Claims in the Agreement is null and void, unenforceable

8

against [her], and does not otherwise bar her from pursuing her rights against Defendant IP, including claims against it for wrongful termination and discrimination." 2018 U.S. Dist. LEXIS, at *6–7. In the current case, Plaintiff seeks an identical declaration. (Complaint, Doc. 1 ¶¶ 41, 43 at PageID 7, 8). It is true that Plaintiff has since cured her constitutional standing defect. As forecasted by the Court, she has added claims encompassed by the Release—discrimination, retaliation, unequal pay, and wrongful termination—to her Complaint in the present action and Defendant has raised the Release as a defense. Yet, critically, Plaintiff still lacks statutory standing, because she is not a "participant" or "beneficiary" under ERISA. Plaintiff is reasserting "the same claim with unchanged facts" to support her standing. *See Hooker v. FEC*, 21 F. App'x 402, 405 (6th Cir. 2001) (affirming dismissal of subsequent suit on the basis of issue preclusion).

Second, the determination of Plaintiff's standing was necessary to the outcome of the prior case. A plaintiff's standing must be established in every case. *See Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1419 (6th Cir. 1996) ("Constitutional standing is *always* a threshold inquiry for us to make before asserting jurisdiction over an appeal.") (concurring opinion).

Third, the prior proceeding resulted in a final judgment on the merits. Plaintiff contends that preclusion cannot apply because *Castellon-Vogel I* was dismissed for lack of subject-matter jurisdiction; therefore, the dismissal was not based on the merits and was without prejudice. (Doc. 10 at PageID 111). To support this contention, Plaintiff cites *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913 (6th Cir. 1986). The court in *Rogers* affirmed that Rule 12(b)(1) judgments normally are not dismissals on the merits

9

because a court that lacks jurisdiction cannot address the merits of a case. *Id.* at 917. However, the court noted that when a plaintiff pursues a statutory right, and the court finds that the plaintiff does not come "within the purview of the statute," that finding is the "death knell of the litigation and has the same effect as a dismissal on the merits." *Id.*

That is precisely the case here. In challenging the Release, Plaintiff is pursuing a statutory right under ERISA. This Court in *Castellon-Vogel I* found that Plaintiff does not come within the purview of ERISA—namely, she was not a "participant" or "beneficiary" for purposes of the ERISA statute and therefore had no cause of action under ERISA. Therefore, *Castellon-Vogel I* was the "death knell" for this and any subsequent litigation and has the same effect as a dismissal on the merits.

*Hooker* likewise is instructive. There plaintiff claimed standing—both as a voter and potential candidate—to challenge the constitutionality of out-of-state campaign contributions, as he had in two previous lawsuits. 21 F. App'x at 404. In the first case, pursuant to Rule 12(b)(1), the district court dismissed his suit with prejudice for lack of standing. *Id.* In the second case, the district court found, based on the dismissal in the first case, that plaintiff "was barred by issue preclusion on the issue of standing by the prior judgment" and consequently dismissed the case. *Id.* Based on these two prior dismissals, the district court held, in the third case, that plaintiff was precluded from relitigating his challenge to out-of-state campaign contributions. *Id.* at 405. Relevant to the third factor restated in *Cobbins*, the *Hooker* court observed that "[i]t is irrelevant that the district court did not reach the underlying merits of Hooker's suits in either *Hooker I*

or *Hooker II*, because the court reached the merits of the issue in question—namely, whether the plaintiff had standing to sue in the case. *Id.* at 405 n.2.

Fourth, and finally, Plaintiff does not contend that she did not have a full and fair opportunity in *Castellon-Vogel I* to litigate her standing issue. Nor could she, in light of the Magistrate Judge's well-reasoned and thorough Report and Recommendation that subsequently was adopted by the presiding district judge.

The Court is satisfied that all requirements of issue preclusion, or collateral estoppel, have been met, and further concludes that defensive use of it in this circumstance is not unfair. Accordingly, Plaintiff may not relitigate the issue of whether this Court has subject-matter jurisdiction over her request for a declaratory judgment. It does not, meaning that Plaintiff cannot challenge the validity of the Release she signed under ERISA.

**B. Plaintiff's discrimination, retaliation, unequal pay, and wrongful termination claims are barred by the Release.[2]**

**1. Plaintiff's federal law claims are waived, because the language of the Release is clear and unmistakable.**

"Federal law controls the validity of a release of a federal cause of action." *Dotson v. Arkema, Inc.*, 397 F. App'x 191, 194 (6th Cir. 2010) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1481 (6th Cir. 1989)); *see also Staggs v. Ausdenmoore*, No. 92-3172, 1993 WL 131942, 1993 U.S. App. LEXIS 41533, at *4 (6th Cir. Apr. 27, 1993) (finding that a release that waives a right to sue under a federal statute is "a question of federal law[]") (citing *Town of Newton v. Rumery*, 480 U.S. 386 (1987)). To be valid, a waiver of statutorily protected rights must be "clear and unmistakable." *Dotson*, 397 F. App'x at 194 (quoting *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983)).

In *Dotson*, the employees' union signed a release that waived any claims relating to violations of ERISA. *Id.* at 193–94. Because the waiver clearly and unmistakably released the employer from such claims, on behalf of both the union *and* its members, the Sixth Circuit confirmed the validity of the waiver vis-à-vis the employees. *Id.* at 194

---

[2] The Court understands this portion of Defendant's Motion to be brought pursuant to Fed. R. Civ. P. 12(b)(6), which allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." On a Rule 12(b)(6) motion, a district court "may consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (internal quotation and citation omitted). The ability of the court to consider supplementary documentation has limits, however, in that it must be "clear that there exist no material disputed issues of fact concerning the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecomms., Inc.,* 672 F.3d 396, 400 (6th Cir. 2012) (internal quotation and citation omitted). In this matter, the Release was attached to Plaintiff's Complaint and there is obviously no dispute as to its relevance.

("Contrary to Plaintiffs' argument, the Release clearly and unambiguously binds individual bargaining unit employees, as well as the Union.").

Here, Plaintiff does not allege that the language of the Release was unclear or ambiguous. Indeed, it is not:

> By signing this Agreement, you release IP from any claim of any kind arising out of or related to your employment with IP, the termination of your employment, or any matter or event occurring up to the date you signed this Termination Agreement. You also agree that, except as provided in Paragraph 8 below, you will not file or be a party to any legal action, or claim against IP regarding these claims.
>
> This is a General Release and covers all claims under federal, state or local law, whether based on statute or common law, that relate to employment, <u>including but not limited to</u>, all federal, state, and local discrimination laws, claims, charges, and legal actions under the following:
>
> - Age Discrimination in Employment Act (which prohibits age discrimination in employment);
> - Title VII of the Civil Rights Act of 1964, as amended (which prohibits harassment or discrimination in employment based on race, color, national origin, religion or sex);
> - Equal Pay Act (which prohibits paying men and women unequal pay for equal work;
>   . . . .
> - Employee Retirement Income Security Act of 1974 ("ERISA"), including any claims for breach of fiduciary duty under ERISA; and
> - Any other federal, state or local laws, ordinances, or regulations prohibiting employment discrimination or regulating the terms and conditions of employment, . . .
>
> This General Release also includes a release and waiver of any claims for breach of express or implied contract, any claims, qui tam or anti-retaliation provisions under any federal, state or local statute or common law relating in any way to the employment relationship, and any right to any recovery of money or any other personal remedy. It applies both to claims that you know about and to claims you do not know about.

13

> This General Release does not release or waive any claims you may have that arise after the date you sign this Agreement. It does not apply to worker's compensation or unemployment claims or any other claim to the extent that those claims cannot be released or waived according to applicable law.

(Complaint, Doc. 1, Release ¶ 7 at PageID 11–12 (emphasis in original)). The language of the Release is clear and unmistakable. Thus, the Release is valid regarding the waiver of any federal law claims.

### 2. Plaintiff's state law claims are waived, because waiver does not violate public policy and the Release includes waivable claims.

Ohio law controls the efficacy of a release for purposes of Plaintiff's state law claims. *AM Int'l, Inc. v. Int'l Forging Equip.*, 743 F. Supp. 525, 530 (N.D. Ohio 1990). Under Ohio law, personal rights—both contractual and statutory—can be waived. *Hank v. Great Lakes Constr. Co.*, 790 F. App'x 690, 695 (6th Cir. 2019). Generally, waivers will be upheld so long as they do not violate public policy or attempt to waive nonwaivable claims. *Id.* "Accordingly, a release waiving the right to bring legal claims 'is ordinarily an absolute bar to a later action on any claim encompassed within that release.'" *Id.* (quoting *Haller v. Borror Corp.*, 552 N.E.2d 207, 210 (Ohio 1990)).

In *Hank*, an employee signed a release, agreeing to not "pursue or file any sort of claim" against his former employer. 709 F. App'x at 693. Later, the employee sued, alleging, among other things, that he was terminated in violation of Ohio statutes protecting against disability and age discrimination and worker's compensation retaliation. *Id.* But because he could not identify any public policy "declaring these

claims nonwaivable," and because the court knew of none, the court found that the waiver barred the employee's claims. *Id.* at 693, 696.

Here, Plaintiff has not alleged that the Release violates any state public policy or that the state law claims within the Release are not waivable. To the contrary, "[i]t is well-established that a party can waive claims of discrimination under [Ohio Rev. Code] 4112.02 in a release." *Turner v. Salvagnini*, No. CA2007-09-233, 2008 Ohio App. LEXIS 3036, 2008 WL 2789290, 2008-Ohio-3596, ¶ 29 (Ohio App. July 21, 2008). Therefore, the Release is valid regarding her state law claims.

### C. Because Plaintiff's federal unequal pay claims are barred by the Release, the Court need not address whether her allegations in the Complaint state a claim upon which relief can be granted.

As an alternative ground for dismissal, and specifically citing Rule 12(b)(6), Defendant argues that Plaintiff has failed to allege sufficient facts in the Complaint to state a federal claim for unequal pay based on her sex. (Doc. 7-1 at PageID 61–63; Doc. 11 at PageID 123–25). Having already determined that the Release Plaintiff signed is valid, the Court need not address this argument.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (Doc. 7) is hereby **GRANTED**. Plaintiff's Complaint (Doc. 1) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

>  /s/ *Michael R. Barrett*
>  Michael R. Barrett, Judge
>  United States District Court